**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL A. NOBLE, On Behalf of Himself and All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12:-cv-07973 |
| | ) | |
| v. | ) | **Hon. Amy J. St. Eve** |
| | ) | |
| | ) | |
| AAR CORP., DAVID P. STORCH, RONALD B. WOODARD, TIMOTHY J. ROMENESKO, NORMAN R. BOBINS, RONALD R. FOGLEMAN, JAMES G. BROCKSMITH, JR., PETER PACE, MICHAEL R. BOYCE, JAMES E. GOODWIN, MARC J. WALFISH, and PATRICK J. KELLY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 4

    A.    Standard On A Motion To Dismiss ................................................................ 4

    B.    Plaintiff's Complaint has Plead Sufficiently Colorable Claims ............................ 6

        1.    Defendants' Breached their Fiduciary Duty
            of Complete Candor ........................................................................... 6

        2.    Plaintiff Seeks Only Material Information ................................................ 7

        3.    The Board has a Fiduciary Duty to Disclose All
            Material Information ........................................................................... 9

        4.    Defendants' Fee Arrangement With its Financial
            Consultants is Material ..................................................................... 12

        5.    Plaintiff's Complaint Sufficiently Pleads Material
            Omissions in the Proxy ..................................................................... 14

    C.    Failure to Disclose Material Information is a Legally Cognizable Injury ........... 16

    D.    Section 102(b)(7) Does Not Bar Plaintiff's Claims Against the Individual
        Defendants ....................................................................................... 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Soc'y for Sav. Bancorp. Inc.*,
  650 A.2d 1270 (Del. 1994) .................................................................................7

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .......................................................................................5

*In re Atheros Commc'n, S'holder Litig.*,
  No. 6124-VCN, 2011 Del. Ch. LEXIS 36 (Del. Ch. Mar. 4, 2011) ................................12, 13

*Awalt v. Marketti*,
  No. 11 C 6142, 2012 U.S. Dist. LEXIS 49182 (N.D. Ill. Apr. 9, 2012).................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*Cliff House Condo. v. Capaldi*,
  No. 10,568, 1991 Del. Ch. LEXIS 146 (Del. Ch. Aug. 26, 1991)........................................18

*Emerald Partners v. Berlin*,
  787 A.2d 85 (Del. 2001) ....................................................................................17

*Frank v. Arnelle*,
  No. 15642, 1998 Del. Ch. LEXIS 176 (Del. Ch. Sept. 16, 1998)........................................10

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) ....................................................................................6

*Gross v. Nationwide Credit, Inc.*,
  No. 1:10-cv-00738, 2011 U.S. Dist. LEXIS 9887 (S.D. Ohio Feb. 3, 2011) ...........................5

*Laborers Local 235 Benefit Funds v. Starent Networks Corp.*,
  No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) .....................................16

*Latesco, L.P. v. Wayport, Inc.*,
  C.A. No. 4167-VCL, 2009 Del. Ch. LEXIS 145 (Del. Ch. July 24, 2009) ..............................6

*Loudon v. Archer-Daniels-Midland Co.*,
  700 A.2d 135 (Del. 1997) ....................................................................................7

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) .......................................................................................9

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S. Ct. 1309 (2011)......................................................................................4, 5

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ................................................................................6

*Millenco L.P. v. meVC Draper Fisher Jurvetson Fund I, Inc.*,
    824 A.2d 11 (Del. Ch. 2002) ..................................................................................6

*Murison v. Bevan*,
    No. 06 C 7065, 2008 U.S. Dist. LEXIS 48876 (N.D. Ill. June 25, 2008) ................4

*In re Netsmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del Ch. 2007) ......................................................................8, 10, 17

*Pfeffer v. Redstone*,
    965 A.2d 676 (Del. 2009) ......................................................................................7

*In re Pure Res., S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002) ..........................................................................8, 17

*Shell Petroleum, Inc. v. Smith*,
    606 A.2d. 112 (Del. 1992) ....................................................................................6

*Skeen v. Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) ...................................................................................7

*Skinner v. Switzer*,
    131 S. Ct. 1289 (2011) .........................................................................................5

*Sonet v. Plum Creek Timber Co., L.P.*,
    C.A. No. 16931, 1999 Del. Ch. LEXIS 49 (Del. Ch. Mar. 18, 1999) ....................15

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992) .......................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................5

*Tsc Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) ..........................................................................................7, 8

*Walker v. Braes Feed Ingredients, Inc.*,
    No. 02 C 9236, 2003 U.S. Dist. LEXIS 25108 (N.D. Ill. Apr. 3, 2003) ..................5

*Weingarden & Stark v. Meenan Oil Co.*,
    No. 7291, 1985 Del. Ch. LEXIS 374 (Del. Ch. Jan. 2, 1985) ...............................15

*Wieboldt Stores, Inc. v. Schottenstein*,
    94 B.R. 488 (N.D. Ill. 1988) .................................................................................4

*Zirn v. VLI Corp.*,
    681 A.2d 1050 (Del. 1996) ......................................................................................................15

**STATUTES**

8 Del. C. § 102(b)(7)..............................................................................................................17, 18

42 U.S.C. § 3229 Corporate and Financial Institution Compensation Fairness Act of 2009 ........10

Securities Exchange Act § 10(b).....................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)................................................................................................................4, 5

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 4

Plaintiff, Paul A. Noble ("Plaintiff"), by and through his appointed counsel, submits this Memorandum Of Law In Opposition To Defendants' Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint. Plaintiff has and continues to assert a colorable claim against Defendant AAR CORP. ("AAR"), together with individual defendants David P. Storch, Ronald B. Woodward, Timothy J. Romenesko, Norman R. Bobins, Ronald R. Fogleman, James G. Brocksmith, Jr., Peter Pace, Michael R. Boyce, James E. Goodwin, Marc J. Walfish and Patrick J. Kelly (collectively, "Defendants"), by breaching their fiduciary duties of care, loyalty, good faith, and complete candor. As alleged in the complaint, Defendants filed a materially misleading proxy filed on Schedule 14A ("the Proxy") in connection with the shareholder vote that took place on October 10, 2012, including Proposal 2's vote on executive compensation (the "Shareholder Vote"). *See* Paul A. Noble Complaint ("Complaint") at 1-4.

## PRELIMINARY STATEMENT

Defendants cannot cite one single case supporting the proposition that Plaintiff does not have a cause of action for breach of the duty of candor or that the disclosures sought by Plaintiff are not material.[1] This motion fails, as, as the Complaint states a claim for breach of fiduciary duty. Only a trial will allow the Court to determine whether the information sought by Plaintiff is material. It is undisputed that directors are fiduciaries to shareholders and must disclose all material information when communicating to shareholders. Specifically, when directors call upon their shareholders to cast a vote on a particular corporate proposal, including advisory Say-

---

[1] Defendants rely heavily on federal regulations promulgated by the Securities and Exchange Commission, which are not challenged here. Similarly, Defendants' reliance on two cases dealing with say-on-pay which are cited in their opposition brief at page 2, footnote 2 are inapposite because those two cases were derivative cases complaining about the company's failure to implement changes to executive compensation after the negative shareholder vote and seeking damages *via* a waste claim. Such is not the case here.

on-Pay votes, the Board has a fiduciary duty of complete candor to disclose all material information concerning the proposal. The AAR Board has abrogated and blatantly disregarded their fiduciary duty by failing to disclose all material information regarding its Say-on-Pay proposal, including material analyses and/or key inputs considered by the Board in contemplation and then recommendation to the Company's shareholders that they vote in favor of Proposal 2's executive compensation. Further, Defendants attempt to shield themselves from liability pursuant to an exculpatory provision in AAR's charter; however, this provision, which protects directors from money damages under certain circumstances, does not apply in this case, as Plaintiff seeks injunctive relief, or in the alternative declaratory relief, but not damages. The Court should deny Defendants' motion to dismiss and permit Plaintiff a fair opportunity to create a full record and prove that Defendants breached their fiduciary duties by failing to disclose material information concerning Proposal 2's executive compensation.

## STATEMENT OF FACTS

AAR is a leading provider of diverse products and services to the worldwide commercial aviation, government and defense industries. The Company operates in four business segments: Aviation Supply Chain; Government and Defense Services; Maintenance, Repair and Overhaul (MRO); and Structures and Systems.

On August 31, 2012, AAR filed their Proxy with the SEC in connection with three proposals submitted for a shareholder vote on October 10, 2012. In Proposal 2 of the Proxy, the Board recommended that its shareholders approve the Company's executive compensation. However, Proposal 2 was not fully and accurately described in the Proxy. In fact, the Proxy contained severe and material disclosure violations regarding the reasons for, consideration and effects of Proposal 2, and why Proposal 2 it is in the best interest of shareholders. Among other

things, while the Proxy disclosed at page 41 that the Board's Compensation Committee retained Aon Hewitt as its independent compensation consultant, the Proxy did not provide a fair summary of Aon Hewitt's analysis regarding Proposal 2. Without this information, AAR's shareholders were unable to cast an informed vote on October 10, 2012.

In particular, Proposal 2 in the Proxy disclosed at page 32-33: "The Compensation Committee, with the assistance of its independent compensation consultant Aon Hewitt, compiled relevant base salary, annual cash incentive and long-term stock incentive information for the key executives for the companies in the Company's peer group. The Compensation Committee considered this information and, in particular, benchmarked the executive compensation of the peer group companies in setting the Fiscal 2012 base salaries, annual cash incentive compensation and target long-term incentive compensation at the Company's named executive officers..." The Proxy further disclosed that "the Compensation Committee historically benchmarks target total direct compensation for the Company's named executive officers in the 50th to 75th percentile of total direct compensation levels of comparable positions at its peer group companies" and also that "the Compensation Committee generally sets the base salaries of the Company's named executive officers at or around the 50th percentile of salary levels of comparable positions at its peer group companies."

However, the Proxy disclosed only the names of the companies that Aon Hewitt used to compare with AAR, but failed to disclose any of the data and/or key inputs relied upon by Aon Hewitt in performing this critical peer benchmarking analysis, which was provided to, and discussed with, the Compensation Committee in making its recommendation to shareholders to support of Proposal 2. By omitting from the Company's Proxy key data underlying the peer benchmarking analysis, performed by Aon Hewitt and relied upon by the Board and/or the

Compensation Committee, the Board breached its fiduciary duty of complete candor to the Company's shareholders and constituted a material omission in connection with the Shareholder Vote. Thus, AAR shareholders were unable to cast an informed vote regarding Proposal 2 on October 10, 2012, now at a minimum the material information must be disclosed to ratify the vote. *See* Complaint ¶¶ 3, 33.

## ARGUMENT

### A.    Standard On A Motion To Dismiss

On a motion to dismiss under Rule 12(b)(6), this Court considers the Plaintiff's complaint allegations in a light most favorable to the plaintiff and takes as true all the factual allegations. *See, e.g. Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498-499 (N.D. Ill. 1988) (citing *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)). Specifically, this Court provides that "a complaint should be dismissed for failure to state a claim only if it ***appears beyond doubt*** that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief." *See Wieboldt Stores*, 94 B.R. at 489 (citing *Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir. 1986)) (emphasis added). "The purpose of a motion to dismiss is to test the sufficiency of the compliant, ***not to decide the merits of the case***." *Murison v. Bevan*, No. 06 C 7065, 2008 U.S. Dist. LEXIS 48876, at *3 (N.D. Ill. June 25, 2008) (emphasis added). As defined by recent Supreme Court decisions, the issue is whether the allegations, viewed collectively, are sufficient (i) to "raise a reasonable expectation that discovery will reveal evidence" supporting the allegations and (ii) for the district court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

This approach determines whether a complaint complies with Federal Rule of Civil Procedure 8(a)(2), which requires "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556);[2] *see also Awalt v. Marketti*, No. 11 C 6142, 2012 U.S. Dist. LEXIS 49182, at *5 (N.D. Ill. Apr. 9, 2012) ("A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Iqbal*, 129 S. Ct. at 648); *Gross v. Nationwide Credit, Inc.*, No. 1:10-cv-00738, 2011 U.S. Dist. LEXIS 9887, at *6 (S.D. Ohio Feb. 3, 2011) ("A complaint must provide sufficient notice to the defendant of the nature of the plaintiff's claims . . . [w]hat *Iqbal* and *Twombly* do require is that plaintiffs provide factual allegations from which a court may plausibly infer a cause of action.") (citations omitted); *Walker v. Braes Feed Ingredients, Inc.*, No. 02 C 9236, 2003 U.S. Dist. LEXIS 25108, at *18 (N.D. Ill. Apr. 3, 2003) ("Federal notice pleading only requires the Plaintiff to allege in a

---

[2] The Supreme Court's more recent opinions reviewing motions to dismiss are significant because, following *Twombly* and *Iqbal*, *Matrixx* and *Skinner v. Switzer*, 131 S. Ct. 1289 (2011) seem closer to the less rigid standard of review that preceded *Twombly*. For example, in *Matrixx*, the unanimous Court reinforced that evaluation of materiality required a pragmatic, "inherently fact-specific" approach and continued to eschew bright-line rules. 131 S. Ct. at 1312 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988)). Along the way, the Court also confirmed that plausibility requires that all allegations are considered collectively, *id.* at 1313, much like all scienter allegations are to be considered together in a Securities Exchange Act § 10(b) claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007). Similarly, in *Skinner*, 131 S. Ct. at 1296, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." In a seeming departure from *Iqbal* (citing the supposedly discredited opinions in *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)), the *Skinner* Court held that "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* 131 S. Ct. at 1296 (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1219, pp. 277-278 (3d ed. 2004 & Supp. 2010)). While not dispositive of the issues presented here, *Matrixx* and *Skinner* necessarily inform the Court's analysis.

Complaint a short and plain statement of the claim to provide the Defendant with fair notice of the claim . . . not spell out every element.").

As further discussed below, Plaintiff has demonstrated colorable claims in his Opposition Motion to Dismiss and has demonstrated a reasonably likelihood of success of the merits. Therefore, the Court should dismiss Defendants' Motion to Dismiss and allow Plaintiff limited discovery to establish a full record demonstrating Defendants' breaches of fiduciary duty.

### B. Plaintiff's Complaint has Plead Sufficiently Colorable Claims

#### 1. Defendants' Breached their Fiduciary Duty of Complete Candor

Ensuring that shareholders are apprised of all material information to make a full informed vote is a fundamental tenant of Delaware law. *Stroud v. Grace*, 606 A.2d 75, 86 (Del. 1992); *see also Millenco L.P. v. meVC Draper Fisher Jurvetson Fund I, Inc.*, 824 A.2d 11, 15 (Del. Ch. 2002) ("Under Delaware law, the fiduciary duties of directors require that they disclose fully and with complete candor all material facts when they solicit proxies from shareholders. [T]hat duty is best discharged through a broad rather than a restrictive approach to disclosure."). In addition, Delaware law entitles shareholders to full and accurate disclosures of all material facts so that shareholders may decide for themselves whether to support corporate proposals, including Say-on-Pay votes. *See, e.g., Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004) ("[T]he fiduciary has the duty to disclose all material facts bearing on the decision at issue."); *Shell Petroleum, Inc. v. Smith*, 606 A.2d. 112, 114 (Del. 1992); *Stroud*, 606 A.2d at 84-85. The duty of disclosure arises when a board asks the stockholders to ***make a discretionary decision***, "such as whether to grant a proxy, to vote yes or no on a particular matter." *Latesco, L.P. v. Wayport, Inc.*, C.A. No. 4167-VCL, 2009 Del. Ch. LEXIS 145, at *20 n. 18 (Del. Ch. July 24, 2009) (quoting *Metro Commc'ns*, 854 A.2d at 156) (emphasis added); *accord Gantler v. Stephens*, 965 A.2d 695, 710 (Del. 2009) ("It is well-settled

law that directors of Delaware corporations have a fiduciary duty to disclose fully and fairly ***all material information within the board's control*** when it seeks shareholder action.") (quoting *Stroud*, 606 A.2d at 84) (emphasis added); *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 137 (Del. 1997) ("Delaware law of the fiduciary duties of directors . . . establishes a general duty of directors to disclose to stockholders all material information reasonably available when seeking stockholder action.").   By failing to disclose a fair summary of the analyses considered by the Board and later publishing a public Proxy recommending Proposal 2 for a shareholder vote, with such analyses absent, the AAR Board has breached their fiduciary duties. Thus, for this reason alone the Court should deny Defendants' Motion to Dismiss.

### 2.    Plaintiff Seeks Only Material Information

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."  *Tsc Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  If there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," it is material and the directors must disclose it.  *Arnold v. Soc'y for Sav. Bancorp. Inc.*, 650 A.2d 1270, 1277 (Del. 1994); *see also Pfeffer v. Redstone*, 965 A.2d 676, 686 (Del. 2009) (finding omitted information material "if a reasonable stockholder would consider it important in deciding whether to tender his shares or would find that the information has altered the 'total mix' of information") (citation omitted).  Further, the material information does not "require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change their vote." *Tsc Indus.*, 426 U.S. at 449. Rather, a fact is material and must be disclosed "if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote."  *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000) (citation omitted).

On a motion to dismiss, materiality is a question that must be left to the trier of fact. *See TSC Indus.*, 426 U.S. at 449. As such it is inappropriate to look beyond the "four corners" of the Complaint.

Here, Defendants have refused to disclose material information concerning Proposal 2's vote on executive compensation. Defendants' now declare that the information Plaintiff seeks is neither individually, or taken collectively material to shareholders. Defendants' Motion to Dismiss ("Motion to Dismiss") at 8-14. However, contrary to Defendants' assertions, the information was material enough to be supplied to the Board by Mercer, the Compensation Committee's financial advisor, in its contemplation and later recommendation to AAR shareholders to vote in favor of Proposal 2's executive compensation. Defendants' cannot have it both ways. The information Plaintiff seeks was material enough then for the Board to consider it as relevant to recommend Proposal 2 for a vote, and should have been provided to AAR shareholders to vote on October 10, 2012. *See In re Pure Res., S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) (finding that shareholders are entitled to a "fair summary" of the investment bankers work); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 199 (Del Ch. 2007) ("[T]he valuation methods used to arrive at that opinion as well as the key inputs and the range of ultimate values generated by those analyses must also be fairly disclosed."). Additionally, Plaintiff has asserted in his complaint to this Court and now reaffirms that he is not seeking the entirety of these analyses be disclosed. Plaintiff is simply seeking and deserves a fair summary of the analyses considered by the Board in recommending AAR shareholders vote in favor of Proposal 2.

Accordingly, this Court should deny Defendants' request to dismiss this case.

3.     **The Board has a Fiduciary Duty to Disclose All Material Information**

While Defendants continue to down play the material significance of the information Plaintiff seeks, the fact remains that the Board reviewed and relied upon particular analyses, performed by Mercer and provided to the Board in considering its recommendation of Proposal 2 to shareholders.   Complaint ¶¶ 3, 33.   All material information considered by the Board in reaching its decision when asking shareholders for their vote must be disclosed, irrespective of the advisory nature in which such vote is sought.   Defendants correctly note that the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") does "not create or imply any change in the board members' fiduciary duties."   Motion to Dismiss at 6 (citing *Gordon v. Goodyear*, No. 12 C 369, 2012 U.S. Dist. LEXIS 97623, at *31 (N.D. Ill. July 13, 2012)).

However, while the Dodd-Frank Act does not create ***new*** fiduciary duties, it continues to impose upon the AAR Board the duty to adhere and maintain to their existing fiduciary duties established under Delaware law, which includes the duty of care and complete candor.[3]   Plaintiff has not sought and not now seeking the Court's action to create new disclosure rules or requirements, as Defendants' allege.  Motion to Dismiss at 6.  Rather, Plaintiff is simply asking this Court to require Defendants to adhere to their existing fiduciary duty, which requires that once a topic has been broached by Defendants in their public communications with shareholders, shareholders are not entitled to "some information," but rather, a good faith, fair summary of the

---

[3]Within this fiduciary relationship the Board of Directors owes the corporation and its shareholders the fiduciary duty of due care, good faith, and loyalty. Thus, "[w]henever directors communicate publicly or directly with shareholders about the ***corporation's affairs***, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty." (emphasis added) Similarly, it follows that "when directors communicate publicly or directly with shareholders about ***corporate matters***" (emphasis added) Directors' owe a fiduciary duty of honesty or complete candor in its communications to shareholders.  *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).

analyses the Board considered in recommending such proposals to shareholders.  *See Frank v. Arnelle*, No. 15642, 1998 Del. Ch. LEXIS 176, at *11 (Del. Ch. Sept. 16, 1998) ("the Nestmart directors owe a duty of complete candor to the Netsmart stockholders, requiring them to disclose all material information in their possession.  ***Completeness, not adequacy, is the mandate***.") (emphasis added); *see also In re Netsmart Techs.*, 924 A.2d at 203 ("Once a board broaches a topic in its disclosures, a duty attaches to provide information that is "materially complete and unbiased by the omission of material facts.").  Anything less is simply not in accordance with Delaware law.

Defendants have seemingly begun to use Dodd-Frank as a shield to hide behind and use as a basis for not disclosing material information to AAR shareholders.  However, a closer look at Dodd-Frank establishes that the legislation was intended to create a new comprehensive framework of transparency and disclosure, not to stand behind the status quo that Defendants now seek to maintain.  In addition, Defendants have misconstrued the new Say-on-Pay requirement under § 951 of the Dodd-Frank Act.  Specifically, HR 3269, which was the bill Congress first considered in implementing the new shareholders' approval on executive compensation required that companies "shall provide for a separate shareholder vote to approve the compensation of executives as disclosed pursuant to the Commission's compensation disclosure rules (which disclosure shall include the compensation committee report, ***the compensation discussion and analysis***, the compensation tables, and ***any related materials***)."  See 42 U.S.C. § 3229 Corporate and Financial Institution Compensation Fairness Act of 2009 [Check this Citation] (emphasis added).

Moreover, the SEC provided in its final rule on Say-on-Pay that "[u]nder Item 402(b)(1), issuers must explain ***all material elements*** of their named executive officers' compensation by

addressing mandatory principles-based topics in their CD&A." *See Securities and Exchange Commission*, Final Rule On Shareholder Approval Of Executive Compensation And Golden Parachute Compensation, 17 CFR 229 (Feb. 2, 2011).  Further, the SEC stated that:

> These mandatory principles based topics require the company to disclose the objective of the company's compensation programs; what the compensation program is designed to reward; each element of the compensation*; why the company chooses to pay each element*; *how the company determines the amount* (and, where applicable, the formula) for each element; and the company's decisions regarding that element fit into the company's overall compensation objectives and affect decisions regarding other elements

*Id*. at 6015 n.76. (emphasis added)

In this case, what Defendants have conveniently left out of their motion to dismiss is that the Peer Group Analyses performed by Mercer, and provided to the Board, is a critical component in analyzing what elements will be paid to their executives and officers as well as how to benchmark and justify executive officers' compensation for the upcoming fiscal year. That is why Plaintiff's counsel specifically focused his argument on October 9, 2012 before the Court on this particular disclosure.  This information is essential and material to shareholders in determining whether to support the Board's recommendation to vote in favor of the Say-on-Pay proposal.

Further, Defendants' allege that Item 402(b) states that the proxy "must disclose only" an explicit list of items under their CD&A analysis (Motion to Dismiss at 10) for Say-on Pay. Defendants could not be more wrong here either. Item 402(b)(1) & (2) states, in relevant part:

> Discuss the compensation awarded to, earned by, or paid to the named executive officers. The discussion *shall explain all material elements of the registrant's compensation of the named executive officers* . . . While the *material information* to be disclosed under Compensation Discussion and Analysis *will vary depending upon the facts and circumstances,* examples of such information *may include*, in a given case, among other things…

Item 402(b)(1) & (2). (emphasis added)

Thus, Congress and the SEC have been very explicit in their rulemaking on the subject of executive compensation disclosure. The SEC recognizes that material information will vary based upon the facts and circumstances because companies consider different information and analyses based up their size and industry. For this reason, therefore, the SEC has chosen not to adopt an "bright-line", explicit list of analyses or elements that must be disclosed in the CD&A analysis, but rather, have endorsed broad proposals that *material* information considered by the Board must be disclosed. Thus, while Defendants assert nothing has in fact changed, Congress' intent in shaping this important legislation was to provide more disclosure, not less. Indeed, if the Court adopts Defendants' position on Say-on-Pay, the act of Congress requiring a mandatory advisory vote would mean nothing, in situations like this one, when shareholders have insufficient information to cast a fully informed vote on the Say-on-Pay proposal. Accordingly, the Court should look to the congressional intent in drafting Item 402 and § 951 of the Dodd-Frank Act, crafting the new Say-on-Pay requirements, in determining whether such information Plaintiff now seeks is material, not on Defendants' blanket assertions that it is not.

### 4. Defendants' Fee Arrangement With its Financial Consultants is Material

Under Delaware law, information regarding how, and to what extent, the Compensation Committee's financial consultant will benefit from the services rendered is material to Plaintiff's determination of how much weight to put into the analyses considered and performed by the financial consultants, Aon Hewitt and Mercer, and provide to the Board in its recommendation of Proposal 2 to AAR shareholders. *See In re Atheros Commc'n, S'holder Litig.*, No. 6124-VCN, 2011 Del. Ch. LEXIS 36, at *27 (Del. Ch. Mar. 4, 2011) ("Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, this Court has required full disclosure of investment banker compensation and

potential conflicts."). While *Atheros* was in the context of a merger, the Court held it was material to shareholders because of the conflict of interest which arises when the financial consultant receives contingent fees upon the rendering of a favorable fairness opinion, the same concept is true here, where a favorable analysis from Mercer may lead to future engagements to be performed by Mercer for AAR.

In addition, Defendants' Motion to Dismiss also mischaracterizes the new disclosure requirements provided by the SEC under Section 10C(c)(2), which includes additional disclosures while preserving the disclosure requirements under Item 407(e)(3). Under Item 407(e)(3)(iii), the Company is required to (1) identify the consultants, (2) state whether such consultants were engaged directly by the compensation committee or any other person; (3) *describe the nature and scope of the consultant's assignment* and the material elements of any instructions given to the consultants under the engagement; and (4) disclose *the aggregate fees paid to a consultant for advice or recommendation on the amount and forms of the executive and director compensation* and the aggregate fees for additional services if the consultant provides both and the fees for the additional services exceeded $120,000 during the fiscal year." Defendants once again have played fast and loose with the disclosure requirements under Item 407(e). As discussed above, Plaintiff seeks disclosure on the topic of why Defendants retained Mercer, but Defendants assert that this information does not need to be disclosed. *See* Motion to Dismiss at 11-12. However, the rule specifically requires that AAR "describe the nature and scope" of Mercer's assignment, which includes disclosing why AAR retained Mercer. By failing to disclose this material information, the AAR Board is not in compliance with Item 407, and AAR aided and abetted the Board by permitting this incomplete and misguided Proxy to be published to AAR shareholders.

Moreover, as discussed above, the rule requires the "aggregate fees paid to a consultant for advice or recommendation on the amount and form of the executive and director compensation." Here, too, Defendants have failed to meet their disclosure requirements under Item 407, which requires AAR to disclose the aggregate fees paid to Aon Hewitt for providing consulting services to AAR and its Board. While Defendants make blanket assertions that they need not disclose this information, the Securities and Exchange Commission disagrees. *See* Item 407(e)(3)(iii). Therefore, because Defendants failed to disclose material information concerning their financial consultants, Plaintiff has demonstrated a reasonable probability of success on the merits. For this reason, Defendants' Motion to Dismiss should be denied.

### 5.  Plaintiff's Complaint Sufficiently Pleads Material Omissions in the Proxy

The material omissions Plaintiff now seeks Defendants to disclose would be conducive to a shareholder's informed decision making process, not simply as a rubber stamp on the Board's decision to favor a particular proposal. By disclosing at a minimum material information concerning, *inter alia*, (1) a fair summary of the Peer Group analysis considered by the Board, (2) a fair summary of the changes in cash incentive award invoked by the Compensation Committee, and (3) a fair summary detailing the Compensation Committee's decision to allocate a particular value, to the Company's executive awards for the company's named executive officers under the 2012 Long Term Incentive Plan; shareholders will be able to thoroughly consider the same information provided by the Board and cast a fully informed vote upon this material information. Plaintiff asserts that this information individually is material; however, taken collectively the material omissions Plaintiff now seeks to eradicate, demonstrates the degree to which Defendants' breached their fiduciary duty of care and complete candor under Delaware State law.

Defendants argue that the information Plaintiff seeks would cause an avalanche of trivial information being provided to AAR shareholders. Motion to Dismiss at 9 (citing *Solomon v. Armstrong*, 747 A.2d 1098, 1130 (Del. Ch. 1999)) (citations omitted). Immediately, however, Defendants then contradict their own argument by stating that even if the information is material, the information is already publicly available if shareholders decide to go through thousands of pages of documents to attempt to ferret the information out of competitors' proxies. Motion to Dismiss at 9 (citing *Wolf v. Assaf*, No. C.A. 15339, 1998 WL 326662, at *3 (Del. Ch. 1998)).

Defendants' assertion that Plaintiff and all other AAR shareholders are required to seek out material information in competitors' proxies is simply not the rule. Shareholders need not, and are not required, to parse the abyss of public information made available in competitors' proxies. *See Sonet v. Plum Creek Timber Co., L.P.*, C.A. No. 16931, 1999 Del. Ch. LEXIS 49, at *28 (Del. Ch. Mar. 18, 1999) ("It is the case that if material facts are buried in a lengthy disclosure documents so that the true import of the information is lost, *such 'buried fact' disclosure may be deemed misleading*.") (emphasis added); *Weingarden & Stark v. Meenan Oil Co.*, No. 7291, 1985 Del. Ch. LEXIS 374, at *9-10 (Del. Ch. Jan. 2, 1985) ("Disclosure is inadequate if the disclosed information is 'buried' in the proxy materials."). Thus, "once defendants travel down a road of partial disclosure [inter alia, the Peer Group Analysis] they have a fiduciary obligation to provide stockholders with an accurate, full, and fair characterization." *See Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996). As asserted throughout Defendants' Motion to Dismiss, Defendants' blanket assertions are just not the law. In addition, the information Plaintiff now seeks is less than trivial, quite the contrary, Plaintiff in one breathe critiqued by Defendants for specifying particular material omissions throughout the Proxy (Complaint at 8-9 (a-h)) and in a second breathe critiqued for seeking some much

information that, in Defendants words, "would cause an avalanche of trivial information." Defendants' once again cannot have it both ways. Plaintiff is seeking material information including these analyses considered by the Board, to bring clarity to shareholders, not confusion. In addition, while Defendants' Proxy provides the identity of Peer Group companies observed by AAR in determining executive compensation, AAR shareholders were uninformed of the data observed in the peer group and the metrics considered (*i.e.* market capitalization, revenue, net income, 1 year TSR ranges, and 2 year TSR ranges) so that AAR shareholders, such as Plaintiff, who sought to review competitors' proxies would even know what to look for.

### C. Failure to Disclose Material Information is a Legally Cognizable Injury

Defendants have wrongfully asserted that Plaintiff has suffered no harm. In fact, the harm that Plaintiff and all other shareholders of AAR suffered was the lack of material information to cast a fully informed vote. Moreover, the harm Plaintiff suffered is not and cannot be cured through monetary damages because monetary damages would not properly redress an infirm and uninformed shareholder vote.

Under Delaware law, a material disclosure violation typically creates *per se* irreparable harm, because the approval is obtained by uninformed or misinformed shareholders, a harm which cannot be adequately remedied by an award of damages. *See Laborers Local 235 Benefit Funds v. Starent Networks Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *1 (Del. Ch. Nov. 18, 2009). In addition, monetary damages will not compensate shareholders of AAR for the value of material information necessary for the shareholders' right to cast this fully informed vote. AAR shareholders need to be given a fair summary of the analyses and information thought to be material enough for the AAR Board to consider it in contemplation and later recommendation of Proposal 2 to Plaintiff and all public shareholders of AAR. In fact, to cast a fully informed vote on Proposal 2's executive compensation, a fair summary of these analyses

must be disclosed as required by *Pure Resources*, which stated that it is "important to know not just the bottom line conclusion, but the key assumptions," which make that conclusion possible. *In re Pure Resources*, 808 A.2d at 449. Moreover, in *Netsmart*, the Delaware Court of Chancery held that "it is incumbent upon a board to provide materially complete and unbiased information, including key inputs, to provide a "fair summary." *In re Netsmart*, 924 A.2d at 203. Further, in *Brocade*, a California court issued a preliminary injunction enjoining a shareholder vote where the material disclosures could not be remedied through monetary damages and the denial of a preliminary injunction would forever preclude shareholders from casting a fully informed vote. *Brocade*, slip op. at 7. Therefore, Plaintiff has demonstrated a cognizable injury, which cannot be remedied through monetary damages.

### D. Section 102(b)(7) Does Not Bar Plaintiff's Claims Against the Individual Defendants

Defendants argue that the exculpatory clause of AAR's charter is an alternative ground for dismissal of Plaintiff's action under 8 Del. C. § 102(b)(7). However, this action does not seek compensatory damages for which directors may escape liability under 8 Del. C. § 102(b)(7). It is well settled, under Delaware State Law, that this provision insulates directors from liability for compensatory damages only, as a result of director's breaching their fiduciary duty of care to the Company's shareholders, not in actions seeking injunctive or declaratory relief. *See Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001) (the adoption of a section 102(b)(7) provision in the corporate charters "bars the recovery of monetary damages from directors" only for claims arising out of a breach of due care). Where, as here, Plaintiff alleges claims that cannot be compensated through compensatory damages, Defendants reliance on section 102(b)(7) is misplaced. Defendants' may not now rely upon section 102(b)(7), where Defendants have failed to disclose material information concerning the Shareholder Vote on Proposal 2 and where now

Plaintiff seeks injunctive or declaratory relief to correct the wrongs created by Defendants malfeasance. Thus, section 102(b)(7) does not now provide a ground to dismiss Plaintiff's complaint.

Similarly, Defendants' argument that Plaintiff must prove scienter is inapposite. First, this case is not one brought under Section 14 of the federal securities laws, but rather, is an action brought by Plaintiff alleging Defendants breached their fiduciary duties of care and complete candor in violation of Delaware State law. Accordingly, Plaintiff's claims before this Court seek only equitable relief requiring that all material information be disclosed to ratify the Shareholder Vote and as such, does not require Plaintiff prove scienter. *See Cliff House Condo. v. Capaldi*, No. 10,568, 1991 Del. Ch. LEXIS 146, at *9 (Del. Ch. Aug. 26, 1991) ("This element of scienter is not required in an equitable … claim; equitable relief is available for negligent or innocent misrepresentations."). Thus, section 102(b)(7) does not protect Defendants.

## CONCLUSION

Defendants' Motion to Dismiss should be denied. In the alternative, Plaintiff seeks leave to amend his complaint.

Dated: October 29, 2012

Respectfully submitted,

**ROETZEL & ANDRESS, LPA**

By: ___s/ Harry O. Channon_____
            Mark D. Belongia
            Harry O. Channon
20 S. Clark Street, Suite 300
Chicago, Illinois 60603
Tel: 312-662-1030
Fax: 312-662-1040

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Avenue, 10th Fl.

New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Counsel for Plaintiff*

## CERTIFICATE OF SERICE

The undersigned, an attorney, states that on the 29th of October, 2012, he electronically filed Plaintiff's Memorandum Of Law In Opposition To Defendants' Motions To Dismiss, with the Clerk of the Court using the CM/ECF system which sent notifications to counsel of record.


By:          s/   Harry O. Channon