**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL NOBLE, on behalf of himself and all others similarly situated,<br><br>                 Plaintiff,<br><br>    v.<br><br>AAR CORP., DAVID P. STORCH, RONALD B. WOODWARD, TIMOTHY J. ROMENSESKO, NORMAN R. BOBINS, RONALD R. FOGELMAN, JAMES G. BROCKSMITH, JR., PETER PACE, MICHAEL R. BOYCE, JAMES E. GOODWIN, MARC J. WALFISH, and PATRICK J. KELLY,<br><br>                 Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 12 C 7973<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On October 4, 2012, Defendants AAR Corp. ("AAR") and AAR's Board of Directors (the "Board" or "Individual Defendants")[1] removed the present shareholder Class Action Complaint from the Circuit Court of DuPage County, Chancery Division, pursuant to 28 U.S.C. §§ 1441 and 1446. On October 5, 2012, Plaintiff Paul A. Noble filed a motion for a temporary restraining order ("TRO") regarding a shareholder vote on the Board's "say on pay" proposal required by Section 951 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), 15 U.S.C. § 78n-1. On October 9, 2012, after conducting a hearing, the Court denied Plaintiff's motion. At AAR's annual meeting held on October 10, 2012, 77%

---

[1] The Individual Defendants are currently on AAR's Board of Directors, except for former director James G. Brocksmith, Jr., who retired from the Board on October 10, 2012.

of the shares voting cast an advisory vote in favor of the Board's "say on pay" proposal that is at issue in this lawsuit.

Before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6).  For the following reasons, the Court grants Defendants' motion to dismiss with prejudice and dismisses this lawsuit in its entirety.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint.  *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).  "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor."  *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).[2]

---

[2]  Plaintiff sets forth the wrong legal standard for a Rule 12(b)(6) motion to dismiss using the "no set of facts" language that originated in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).  In 2007, the United States Supreme Court unequivocally rejected

# BACKGROUND

AAR is a Delaware corporation that provides products and services to the worldwide commercial aviation and defense industries. (R. 1-1, Compl. ¶¶ 9, 30.) AAR is publically traded on the New York and Chicago Stock Exchanges as "AIR." (*Id*. ¶ 9.) Plaintiff brought the present direct shareholder class action lawsuit to enjoin a shareholder vote that took place at the annual general meeting of AAR shareholders on October 10, 2012 at AAR's corporate offices in Wood Dale, Illinois. (*Id.* ¶ 1.) On August 31, 2012, AAR filed with the Securities and Exchange Commission ("SEC") a Proxy Statement on Form Schedule 14A (the "Proxy") in connection with the October 12, 2012 shareholder vote on three proposals. (*Id*. ¶¶ 2, 31.) AAR's Proxy Statement was a total of 70 pages, including 40 pages of executive compensation information. (R. 35-3, Ex B, Schedule 14A Proxy Stmt.) In the Proxy, the Board of Directors specifically recommended that AAR shareholders vote in favor of Proposal 2 to approve AAR's top five executives' compensation.[3] (*Id*. ¶¶ 3, 31.) Proposal 2 of the Proxy stated in relevant part:

## PROPOSAL 2 — ADVISORY RESOLUTION ON EXECUTIVE COMPENSATION

We are asking our stockholders to approve the following advisory resolution on the compensation awarded to our five named executive officers for Fiscal 2012, as disclosed in this proxy statement:

---

this language when retooling the federal pleading standards. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) ("after puzzling the profession for 50 years, this famous observation has earned its retirement").

[3] In the Complaint, Plaintiff alleges that the proposal at issue was Proposal 3, but Plaintiff cites the text of Proposal 2 as the relevant proposal. Indeed, from the context of the parties' arguments Proposal 2 — Advisory Resolution on Executive Compensation — is the proposal at issue in this lawsuit.

"**RESOLVED,** that the stockholders of the Company approve, on an advisory basis, the compensation of the named executive officers for Fiscal 2012, as reported in this proxy statement pursuant to Item 402 of Regulation S-K under the Securities Exchange Act of 1934, including the Compensation Discussion and Analysis, compensation tables and narrative discussion."

Our Board of Directors recommends a vote **"FOR"** this advisory resolution for the following principal reasons:

> • Our compensation policies and practices have proven effective over time in achieving the Company's compensation goals of attracting, retaining, motivating and rewarding executives of the Company and aligning their interests with the interests of the Company's stockholders; and

> • The Company has in place a performance-based compensation system that links executive pay to the performance of the Company. In Fiscal 2012, variable performance-based compensation — meaning annual cash incentives, performance-based restricted stock and stock options — represented a significant percentage of each named executive officers' total compensation.

Our Board of Directors determined that the advisory resolution, commonly known as a "say on pay" proposal, should be voted on annually by our stockholders given the importance of the Company's executive compensation program. While the advisory resolution is not binding on the Board of Directors, the Board will review and consider the results of the "say on pay" vote, the opinions of our stockholders, and other relevant factors in making future decisions regarding the Company's executive compensation program.

We encourage our stockholders to read the "Compensation Discussion and Analysis" and the "Summary Compensation Table" and other related compensation tables and narrative located elsewhere [in] this proxy statement. These sections describe our executive compensation policies and practices and provide detailed information about the compensation of our named executive officers.

**OUR BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS THAT YOU VOTE FOR THE APPROVAL OF THE ADVISORY RESOLUTION ON EXECUTIVE COMPENSATION.**

(*Id.* ¶ 32.)

Plaintiff alleges that the Proxy fails to provide adequate disclosures as to exactly what the Board considered in making its executive compensation recommendations in relation to Proposal 2. (*Id*. ¶ 3.) More specifically, Plaintiff maintains that Proposal 2 is deficient because it omitted the following information: (1) how the Board's Compensation Committee selected Aon Hewitt as its independent compensation consultant for fiscal year 2012; (2) why the Compensation Committee replaced Aon Hewitt with Mercer for fiscal year 2013; (3) why Vice President Terry D. Stinson's compensation differs from that of the other executive officers; (4) the identities of the ten companies that were removed from the Company's Peer Group and the reason five new companies were added to the Peer Group for fiscal year 2012; (5) information about compensation for AAR's peer companies, such as base salary and long-term stock incentive; (6) the reason why the Compensation Committee benchmarks target total direct compensation for executives; (7) how the Board and/or Compensation Committee determined to reduce the executives' cash incentive awards for fiscal year 2012; and (8) how the Compensation Committee allocated the dollar value of the stock awards to the named executives. (*Id*. ¶ 33.) In a supplement to his TRO motion, Plaintiff also maintained that the Proxy only disclosed the names of the companies in its peer companies and not the relevant data or key inputs upon which Aon Hewitt relied.

Because this information was not disclosed in relation to Proposal 2, Plaintiff contends that the Individual Defendants as Board Members violated their fiduciary duties of care, loyalty, and good faith owed to the public shareholders of AAR and have acted to potentially put their personal interests ahead of the interests of AAR shareholders in Count I of the Complaint. (*Id*. ¶¶ 4, 35.) In Count II, Plaintiff alleges that AAR aided and abetted the Individual Defendants'

breach of their fiduciary duties. (*Id.* ¶ 76.) As discussed, Plaintiff sought to enjoin AAR from consummating the October 10, 2012 shareholder vote on Proposal 2, but the Court denied Plaintiff's TRO motion on October 9, 2012.

## ANALYSIS

In the present motion to dismiss, Defendants explain that the October 10, 2012 shareholder vote as to Proposal 2 concerned an advisory "say on pay" vote as required by Section 951 of the Dodd-Frank Act and that because this vote was advisory, they were not required to disclose the information that is the basis of Plaintiff's breach of fiduciary duty claim. "'Say on pay' is a shorthand reference to a corporate mechanism for allowing shareholders to voice their opinion on executive compensation." *Weinberg ex rel. BioMed Realty Trust, Inc. v. Gold,* 838 F.Supp.2d 355, 356 n.1 (D.Md. 2012). As the Court explained in another lawsuit:

> The Dodd–Frank Act became law in July 2010. The stated purpose of the law is to "promote the financial stability of the United States by improving accountability and transparency in the financial system, to end 'too big to fail', to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes." Pub.L.No. 111–203, Stat. 1376 (2010). Section 951 of the Dodd–Frank Act requires publicly-traded companies to permit shareholders to vote on executive compensation at least once every three years. 15 U.S.C. § 78n–1. It specifically provides that the shareholder vote "shall not be binding on the issuer or the board of directors." *Id.* § 78n–1(c). Further, the vote "may not be construed" as follows:
>
> > (1) as overruling a decision by such issuer or board of directors;
> >
> > (2) to create or imply any change to the fiduciary duties of such issuer or board of directors;
> >
> > (3) to create or imply any additional fiduciary duties for such issuer or board of directors; or
> >
> > (4) to restrict or limit the ability of shareholders to make proposals for inclusion in proxy materials related to executive compensation.

*Id.*

*Gordon v. Goodyear,* No. 12 C 0369, 2012 WL 2885695, at *9-10 (N.D. Ill. July 13, 2012); *see also Laborer's Local v. Intersil,* 868 F.Supp.2d 838, 847-48 (N.D. Cal. 2012). As the Court further explained, "[t]he plain language of the statute makes clear that the shareholders' vote is non-binding on the corporation and that it does not create or imply any change in the board members' fiduciary duties." *Gordon,* 2012 WL 2885695, at *10; *see also Raul v. Rynd,* ___F.Supp.2d ___, 2013 WL 1010290, at *2 (D. Del. Mar. 14, 2013).

As to Plaintiff's claim that Defendant Board Members violated their fiduciary duties as alleged in Count I, the parties do not dispute that Delaware law applies. Under Delaware law, "a board of directors is under a fiduciary duty to disclose material information when seeking shareholder action." *Malone v. Brincat,* 722 A.2d 5, 9 (Del. 1998); *see also Lonergan v. EPE Holdings, LLC,* 5 A.3d 1008, 1023 (Del. Ch. 2010) ("In the corporate context, the duty of disclosure is a fiduciary duty that 'derives from the duties of care and loyalty.'") (citation omitted). "[T]he duty of disclosure 'represents nothing more than the well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Zirn v. VLI Corp.,* 681 A.2d 1050, 1056 (Del. 1996) (citation omitted). "An omitted fact is material if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote." *Loudon v. Archer-Daniels-Midland Co.,* 700 A.2d 135, 143 (Del. 1997); *see also Pfeffer v. Redstone,* 965 A.2d 676, 684 (Del. 2009).

Defendants first argue that Plaintiff fails to state a claim upon which relief can be granted because the information omitted from the Proxy was not required by law. The Court agrees. To

clarify, in connection with a "say on pay" vote, the Dodd-Frank Act provides that the only disclosures required are those set forth in 17 C.F.R. § 229.402, also known as Item 402 of Regulation S-K. *See* 15 U.S.C. § 78n-1(a)(1). Item 407 of Regulation S-K, 17 C.F.R. § 229.407, further provides reporting obligations in connection with the retention of compensation consultants. Specifically, "when proxies are solicited for an election of directors or for certain actions related to executive and director compensation, the proxy statement must include information specified in Item 402 of Regulation S–K, which, in turn, sets forth disclosure requirements with respect to various categories of executive and director compensation, including salaries, bonuses, stock option grants, and others." *Resnik v. Swartz,* 303 F.3d 147, 151 (2d Cir. 2002). Under Item 402, for example, prior to a "say on pay" vote, companies have to disclose to their shareholders the compensation awarded to, earned by, or paid to the named executive officers; explain all material elements of the registrant's compensation of the named executive officers; and describe how the registrant determines the amount, and, when applicable, the formula, for each element to pay. *See* 17 C.F.R. § 229.402(b); *Greenlight Capital, L.P. v. Apple, Inc.,* Nos. 13 Civ. 900 & 13 Civ. 976, 2013 WL 646547, at *11 (S.D.N.Y. Feb. 22, 2013).

Plaintiff does not dispute that Defendants have complied with the federal disclosure requirements under the Dodd-Frank Act nor does he point to any statutes, regulations, or case law that require corporations to disclosure more than the federal disclosure requirements. Indeed, Plaintiff does not identify how the alleged omissions are even arguably covered under Item 402 or Item 407. Instead, Plaintiff attempts to create additional disclosure obligations for "say on pay" votes without citing legal precedent other than case law involving the required

8

disclosures for shareholder actions outside of the context of executive pay. *See, e.g., In re Netsmart Tech., Inc., Shareholders Litig.,* 924 A.2d 171, 199 (Del. Ch. 2007). Plaintiff's bare-boned arguments are without merit, especially in light of the business judgment deference accorded directors when setting executive compensation. *See Brehm v. Eisner,* 746 A.2d 244, 263 (Del. 2000).

Next, because the Court has already denied Plaintiff's TRO motion and the proxy vote took place on October 12, 2012, the Court turns to the remaining relief Plaintiff seeks to determine whether Plaintiff has alleged any cognizable injury that resulted from the Board's alleged breach. Under Delaware law, a breach of the duty to disclose gives rise to a direct, not derivative, shareholder claim because any such breach implicates a shareholder's right to cast an informed vote. *See In re J.P. Morgan Chase & Co. Shareholder Litig.,* 906 A.2d 766, 772 (Del. 2006). To establish a breach of the duty of disclosure — which is an application in the specific context of a board's fiduciary duties of good faith, care, and loyalty — Plaintiff "must allege that facts are missing from the statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." *Malpiede v. Townson,* 780 A.2d 1075, 1087 (Del. 2001) (quoting *Loudon,* 700 A.2d at 142). In a failure to disclose claim, an injury occurs if the breach causes "a deprivation to the stockholders' economic interests or [an] impairment of their voting rights." *Loudon,* 700 A.2d at 147 ("under Delaware law there is no per se rule that would allow damages for all director breaches of the fiduciary duty of disclosure."); *see also In re Transkaryotic Therapies, Inc.,* 954 A.2d 346, 360 (Del. Ch. 2008) ("a breach of the duty of disclosure does not automatically result in a nominal damages award.").

Here, Proposal 2 of the Proxy concerned executive pay for AAR's five named executive

officers, and therefore, any harm resulting from the Board's failure to disclose concerns executive compensation. Accordingly, if the result of the failure to disclose involved the overpayment of AAR's executives' compensation, that overpayment would damage the corporation in the context of corporate waste — not the individual shareholders' economic interests. *See J.P. Morgan Chase,* 906 A.2d at 773; *In re Citigroup Inc. Shareholder Derivative Litig.,* 964 A.2d 106, 138 (Del. Ch. 2009). To clarify, the shareholder vote on Proposal 2 regarding executive compensation did not affect the shareholders' right to a share of AAR's economic profits. *See Loudon*, 700 A.2d at 147 n.47; *In re Tyson Foods, Inc.*, 919 A.2d 563, 602 (Del. Ch. 2007). Furthermore, "taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in" Plaintiff's favor, *see AnchorBank,* 649 F.3d at 614, Plaintiff has not alleged or argued that the Board's failure to disclose information regarding the "say on pay" vote impaired shareholder voting rights, such as a reduction in shareholder voting power. *See Loudon,* 700 A.2d at 147; *see also Tyson Foods,* 919 A.2d at 602.

Indeed, in response to Defendants' motion to dismiss, Plaintiff asserts that he is not seeking money damages. Instead, he argues that a material disclosure violation typically creates per se irreparable harm. Plaintiff's argument is not supported by the legal authority upon which he relies, especially at this procedural posture, *see Laborers Local 235 Benefit Funds v. Starent Networks, Corp.,* No. 5002-CC, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009) (unpublished), and the Court has already denied Plaintiff's TRO motion concluding that Plaintiff failed to establish irreparable harm. (*See* R. 40, Hr'g Tr., at 29.) In addition, Plaintiff's speculation at the TRO hearing that if the shareholders turned down the executive compensation recommendation in Proposal 2, it could have saved the company money is merely "paint[ing] [a]

derivative claim[] with a disclosure coating." *See Thornton v. Bernard Tech., Inc.,* No. 962-VCN, 2009 WL 426179, at *3 n.28 (Del. Ch. Feb. 20, 2009). Put differently, if Plaintiff is seeking rescission of the executive compensation vote and disgorgement, that remedy flows to the corporation, and is therefore derivative. *See Tyson Foods,* 919 A.2d at 601-02 ("For a shareholder (or, as here, a class of shareholders) to maintain a direct claim, he or she must identify an injury that is not dependent upon injury to the corporation."); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1039 (Del. 2004) ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation."). And, as discussed throughout this opinion, Plaintiff's action is a direct action and not a derivative action brought on behalf of AAR. *See* Fed.R.Civ.P. 23.1; Delaware Ct. Ch. R. 23.1. In sum, Plaintiff does not articulate or substantiate how the alleged omissions from the "say on pay" proposal caused shareholder injury as required under Delaware law. *See Malpiede,* 780 A.2d at 1087; *Loudon,* 700 A.2d at 142. As such, "[l]acking any form of relief that might be granted, [P]laintiff[] ha[s] failed to state a claim." *Tyson Foods,* 919 A.2d at 602.

On a final note, because Plaintiff failed to address Defendants' arguments regarding his aiding and abetting claim, the Court grants Defendants' motion to dismiss Count II. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal brief amounts to abandonment of claims). Plaintiff's aiding and abetting claim also fails because it is contingent on his breach of fiduciary duty claim. *See Malpiede,* 780 A.2d at 1096 (listing elements of aiding and abetting a fiduciary breach); *see also Raul*, 2013 WL 1010290, at *2.

## CONCLUSION

For these reasons, the Court grants Defendants' motion to dismiss and dismisses this lawsuit in its entirety.

**Dated:** April 3, 2013

ENTERED

**AMY J. ST[E]VE**
**United States District Court Judge**